UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA, ALEXANDRIA DIVISION

DEMEKE ENCHALLEW,                                    2025 SEP 29  A 10: 17      Civil Action No.: 1:25-CV-1628-PTG-LRV

Plaintiff,

JOHN/JANE DOE CIA POLICE OFFICERS 1–10,

in their individual capacities,

Defendants.

**COMPLAINT FOR DAMAGES UNDER BIVENS**

**JURY TRIAL DEMANDED**

## PARTIES

1. Plaintiff: Demeke Enchallew is an adult resident of Washington, D.C., and a licensed taxi driver.

2. Plaintiff's mailing address: 1415 Tuckerman St NW, Apt 119, Washington, DC 20011.

3. Defendants are John/Jane Doe CIA Police Officers 1–10 who, on June 11, 2025, performed ordinary, line-level law-enforcement tasks at or near a visitor drop-off area in Chantilly, Virginia.

4. Each Defendant is sued in an individual capacity for actions taken under color of federal authority. At present, Plaintiff can identify two CIA Police officers by last name only: Ofc. Harper (first-contact officer) and Sgt. Gondolfo (the second officer who took over and directed the use of force). Plaintiff will amend to add full names when produced in discovery.

## JURISDICTION AND VENUE

5. This action arises under the Constitution of the United States.

6. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 pursuant to Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).

7. Venue is proper in the Eastern District of Virginia, Alexandria Division, under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims occurred in Fairfax County, Virginia.

## INTRODUCTORY STATEMENT

8. Plaintiff does not challenge national-security policy or facility rules.

9. Plaintiff seeks damages for past, on-scene misconduct by CIA Police officers performing routine policing in a public visitor drop-off area.

10. This case concerns a classic Fourth Amendment unlawful seizure, excessive force, and unlawful search, within Bivens' core.

## PUBLIC INTEREST, DUTY, AND TRANSPARENCY (RESPECTFULLY STATED)

11. CIA Police exist to protect members of the public and those who work to serve them.

12. Citizens should be safe from intentional, deliberate harm by those entrusted with badges and authority.

13. It is frightening when working, innocent people are harmed without cause by officers who are supposed to protect them.

14. Plaintiff recognizes the Court's duty to balance public access with legitimate security needs.

15. Appropriate redactions for genuine security information may be warranted.

16. Blanket sealing of non-sensitive materials, however, would not serve the public's interest in transparency and accountability.

17. For these reasons, this matter warrants careful public attention consistent with respect for the Court's process.

**FACTS**

18. On June 11, 2025, at his passenger's request, Plaintiff stopped at 13800 Air and Space Museum Parkway, Chantilly, Virginia, just inside the facility near the parking-lot entrance, in a public visitor drop-off area. At that location, there were no barricades, no officers posted, and no clearly legible restriction signs visible to an approaching driver; rather, the posted signage directed "Visitor Center" with an arrow toward the entrance. An area open to everyone without restriction.

19. Plaintiff exited momentarily to open the passenger door as a courtesy.

20. Ofc. Harper ran from a nearby building and told Plaintiff to proceed to the roundabout.

21. Plaintiff immediately complied with Ofc—Harper's order.

22. Plaintiff completed the drop-off at the roundabout in front of Ofc. Harper.

23. The passenger then walked directly into the building.

24. As Plaintiff began to leave, Ofc. Harper ordered, "Do not move," without stating any violation.

25. Plaintiff asked, "What did I do wrong?" Ofc. Harper repeated, "Do not move."

26. Within moments, approximately five or six additional officers arrived and surrounded Plaintiff's marked Yellow Cab.

27. Sgt. Gondolfo, who had not been present at the outset, then took over the encounter.

28. Sgt. Gondolfo approached the driver's window and demanded "paperwork."

29. Plaintiff replied, "What did I do wrong? Please let me go; I have people waiting who need my help."

30. Realizing he would not be allowed to leave, Plaintiff calmly stated, "I'm recording for my protection and safety," and lifted his phone to record from inside his taxi.

31. Sgt. Gondolfo immediately snatched the phone from Plaintiff's hand, opened the car door, and repeatedly ordered, "Get out of the car," in rapid succession—apparently to create the impression of noncompliance—while refusing to answer Plaintiff's question, "What did I do wrong?" In fear of escalating aggression, Plaintiff attempted to comply as Sgt. Gondolfo twisted his arm.

32. CIA Police officers threatened Plaintiff with jail, dragged him from the car, and slammed him onto hot asphalt, handcuffed him, and removed his shoes.

33. As a result, Plaintiff suffered bleeding knees, hip pain, and a shoulder muscle tear, and he was left handcuffed and injured in the hot sun for an extended period.

34. Plaintiff asked for local police (911) to witness and record because the officers were not acting like law-enforcement professionals, and CIA Police officers delayed and interfered with that request.

35. Plaintiff's video captures the interaction at the driver's window and the officers' commands and conversation during the encounter.

35A. Although officers seized Plaintiff's phone, no recording-related offense was alleged at the scene, and no such charge was ever filed. This seizure operated as a direct evidence distraction and suppression—hindering or preventing the collection and preservation of evidence of CIA Police officers' wrongful acts they intended to perform.

Without a warrant, probable cause, or consent, CIA Police officers searched Plaintiff's person. CIA Police officers searched Plaintiff's taxi and caused it to be towed and impounded, resulting in fees and lost work. During the incident, CIA Police officers humiliated Plaintiff by taking photos of him while he was in a compromised condition, and laughing and mocking him when he mentioned filing a lawsuit.

## CITATIONS AND DISMISSAL

39. CIA Police issued multiple citations/charges against Plaintiff, including but not limited to: (a) "Stopping on a Highway"; (b) "Unauthorized Entry into a Federal Installation"; (c) "Failure to Comply with Officer's Order"; (d) "Possession of a Weapon Without Authorization"; and (e) "Disorderly Conduct."

40. Each citation/charge lacked probable cause.

41. Each was terminated in Plaintiff's favor and dismissed with prejudice.

41A. Notably, despite officers' assertions and the seizure of Plaintiff's phone, no citation or charge was ever issued related to recording, filming, or "interference" based on recording.

## COUNT 1 – UNREASONABLE SEIZURE / FALSE ARREST (FOURTH AMENDMENT)

42. CIA Police officers lacked reasonable suspicion or probable cause to detain, restrain, and arrest Plaintiff after he fully complied and completed a lawful drop-off in a public area.

43. The restraint, handcuffing, and immobilization constituted an unreasonable seizure in violation of the Fourth Amendment.

## COUNT 2 – EXCESSIVE FORCE (FOURTH AMENDMENT)

44. CIA Police officers used objectively unreasonable force against a compliant, non-threatening taxi driver by twisting his arm, slamming him onto hot asphalt, removing his shoes (cruel and unusual punishment-the Eighth Amendment), and leaving him exposed to heat.

45. The force caused documented physical injury and severe emotional harm, including PTSD.

## COUNT 3 – UNLAWFUL SEARCH OF PERSON (FOURTH AMENDMENT)

46. CIA Police officers searched Plaintiff's person and pockets without a warrant, probable cause, consent, or any valid exception.

## COUNT 4 – UNLAWFUL SEARCH OF VEHICLE (FOURTH AMENDMENT)

47. CIA Police officers conducted a warrantless search of Plaintiff's vehicle and had it towed and impounded.

48. Any asserted "inventory search" was pre-textual and not performed pursuant to standardized, written procedures.

49. The search occurred prior to any valid arrest.

50. There was no community-caretaking necessity.

## COUNT 5 – MALICIOUS PROSECUTION (FOURTH AMENDMENT)

51. CIA Police officers initiated and continued legal process by issuing citations/charges without probable cause.

52. The proceedings terminated in Plaintiff's favor (dismissed with prejudice).

53. Plaintiff suffered deprivation of liberty, emotional distress, legal expense, lost income, and reputational harm.

## QUALIFIED IMMUNITY

54. A reasonable officer would have known that the conduct described above violated clearly established Fourth Amendment rights.

## DAMAGES

55. As a direct and proximate result of CIA Police officers' conduct, Plaintiff suffered physical injuries and medical expenses.

56. Plaintiff suffered PTSD and severe emotional distress, including nightmares, hypervigilance, anxiety, and sleep disturbance.

57. Plaintiff suffered humiliation and loss of enjoyment of life.

58. Plaintiff suffered lost income and business opportunities.

59. Plaintiff incurred towing, impound, and other property losses.

60. Other special and general damages will be proven at trial.

61. CIA Police officers acted maliciously and with reckless disregard for Plaintiff's rights, warranting punitive damages.

## PRAYER FOR RELIEF

Plaintiff respectfully requests judgment against all Defendants, jointly and severally, awarding:

- Compensatory damages of $3,500,000, or such amount as the jury deems proper;
- Punitive damages;
- Costs of suit and any further relief the Court deems just and proper; and
- A jury trial on all issues so triable.

## DOE IDENTIFICATION

62. Plaintiff will diligently identify each Doe officer through initial disclosures, subpoenas, and discovery.

63. Plaintiff will amend to substitute the true names and seek relation-back under the applicable rules upon identification.

## JURY DEMAND

64. Plaintiff demands a trial by jury on all issues so triable.


Respectfully submitted,


/s/ Demeke Enchallew

_____

Signature

Demeke Enchallew, Pro Se

1415 Tuckerman St NW, Apt 119

Washington, DC 20011

Phone: 202-905-7270

Email: chefdemeke@yahoo.com

Date: September 29, 2025

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
___Alexandria___ DIVISION

Demeke Enchallew
_____
Plaintiff(s),

v.

John/Jane Doe, CIA police
1-10 in their individual capacity
_____
Defendant(s),

Civil Action Number: _____

## LOCAL RULE 83.1 (N) CERTIFICATION

I declare under penalty of perjury that:

No attorney has prepared or assisted in the preparation of ___Complaint___.
(Title of Document)

Demeke Enchallew
_____
Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: __09/29/2025__ (Date)

OR

The following attorney(s) prepared or assisted me in preparation of _____.
(Title of Document)

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document.

_____
(Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: _____ (Date)